is settling into a chair there. And both of us, Judge Rollinson and I, thank Judge Zipps for donating her time to help us out with our circuit workload. And it's really appreciated. Now, we're turning now to the argument in the Fort case, Dallin Fort v. State of Washington. And for appellant for Fort, we have Mr. Spencer Babbitt. And by the way, I apologize, I mispronouncing names of some advocates, so I'm sorry about that. And for for the State of Washington, I think it's Mr. Brooks. So I think we could proceed with the argument on behalf of Mr. Fort. The case is set for 15 minutes per side. And so if you're able to stop as an appellant before that's all gone, you can reserve some rebuttal. If you can't, I'm sure I'll give you an extra minute or two. If you need, of course, if Judge Zipps or Judge Rollinson is asking you questions, you can go on as long as they have the stamina to keep asking. Good, so we can proceed, Mr. Babbitt. Understood. Good morning to the panel. My name is Spencer Babbitt. I represent Dallin Fort, who is the appellant in this court and was the plaintiff below. Perfect pronunciation, Your Honor, by the way, in the introduction there. I represent Mr. Fort, who is a man who was a lawsuit he filed against the Indeterminate Sentence Review Board here in Washington. Now, this is an appeal of an order granting a 12B6 motion to dismiss. As I'm sure the court is aware, the standard of review here is de novo. And the plaintiff should prevail on a motion to dismiss unless there's no plausible theory on which they could prevail, even if all the facts were taken and viewed in their favor. And so what happened here is Mr. Fort was previously convicted of at this point. And the nature of his offenses meant that he was sentenced to essentially a minimum term, but the upper end of the term was indeterminate, meaning it could be modified or truncated by this board, depending on the results of their review when the minimum term was up. And so, Mr. Fort, complicated procedural history. So he was initially convicted. He's serving his sentence. And the board actually does conduct one of these hearings because his minimum term was approaching. And he doesn't appear for the hearing. And so their result is they add five years, essentially 60 months, onto his sentence at that point in time, which they were authorized to do in the current state of things at that point, which I believe was 2014. And then while Mr. Fort is serving that sentence, he attacks his conviction. First off, he does a direct appeal, which is unsuccessful and is affirmed. But second off, he files a personal restraint petition, essentially a collateral attack here in Washington, analogous to a habeas corpus petition. And that is successful. And his convictions are reversed, and he gets remanded for a new trial. Now, by that point, he's convicted again at a second trial, and he's sent to a DOC facility here in Washington. And by that point, with the credit from the time in his original sentence, he had already reached the minimum term that he had been sentenced to when he's sent to the second facility. And there's a statutory scheme here in Washington governing this indeterminate sentence review board. And that scheme not only doesn't describe the procedures and the requirements the board has to follow when conducting these hearings and what they're supposed to take into account when making these decisions on whether to release offenders or not, it also specifies some pretty strict timeframes that these hearings are supposed to be held within based on the triggering date, which can be, you know, the expiration of the minimum term, or in this case of Mr. Fort, given the kind of roundabout way that his case took, showing up on the door of a DOC facility to serve a sentence where you already have essentially reached the minimum term. Now, the statute, RCW 995-420, here in Washington, in the revised code of Washington, lists those timeframes where these hearings are supposed to be held. And if your minimum term is going to expire within 120 days of your arrival at the facility, the court is required to hold a hearing and make a determination on whether you should be released or whether the sentence could be extended, et cetera, kind of as happened to Mr. Fort back in 2014. Now, in this case, despite the fact that the statute deprives the board itself of discretion on when to hold these hearings in the sense that it requires essentially a deadline that's in the plain language of the statute and it's mandated language, it says the shell hold a hearing no later than this particular date. So unfortunately, those were not followed in Mr. Fort's case. And so it resulted in him being, I don't believe he received a hearing on his case, or excuse me, in front of the board, I believe from his second sentencing after the retrial. Let me see. He was sentenced in June of 2017, and it was not until July of 2018 that this hearing was actually held. And so the result of that is essentially Mr. Fort serving a sentence longer than what had been authorized before. He had reached his minimum term already, and there was a possibility that he would have been released. Of course, I can't speculate on whether he actually would have been or not. That's the board's discretionary determination, and that's not what we're here challenging today. We're challenging the procedural defects that led up to the delay in him receiving this hearing, which then results in a discretionary decision from the board. Now, I'm aware of the case law, and the state cited much of it. There's cases here, Washington-Taggart, as well as the Castillo case in federal court, talking about quasi-judicial immunity. And of course, that's the defense that was raised in the motion to dismiss and the basis for the order granting that. Now, of course, the case law indicates that any sort of discretionary decision, even if it's not made by a judge themselves or a prosecutor or someone in that type of capacity, any sort of discretionary decision, even in more mundane tasks like scheduling hearings or whatever it might be, those are, you know, any sort of issue with that is subject to quasi-judicial immunity because it's so intertwined with the judicial process that we can't piecemeal it out, these different decisions that are made along the way that come up with an end result. We believe the difference here in Mr. Fort's case is that the statutory scheme in Washington deprives the board of any discretion to set these hearings later than is mandated by the statute. So this is a very mechanical, non-discretionary procedural process similar to the rules of appellate procedure we follow in this court or state appellate courts, any other court. Counsel, the hearing that was scheduled untimely did have to occur before the board could make a decision, correct? Yes, Your Honor, and that's required, I believe. If Your Honor would bear with me, I think I can quote the part of the statute that says, yes, in subsection 3A of that statute, Your Honor, it says when discussing when to hold the hearing, it says the board shall conduct a hearing to determine whether it is more likely than not the offender will engage in sex offenses if released on conditions set by the board. And so it does say shall hold a hearing. And so my interpretation of that would just be that it is a required hearing and they can't make that, even the initial hearing in 2014, they held it because it's required, but Mr. Ford did not appear specifically at that hearing and that was the end result of that, but it was held. But if the hearing's required to make the decision as to when this sentence is going to end and what the conditions would be upon release, isn't that intertwined with the setting of the hearing itself? I mean, they've missed a deadline and maybe your client would have gotten out earlier, but isn't that setting of the hearing part of the actual decision itself, even if they didn't comply with the time requirements? Your Honor, great question. And I think that that's kind of the thrust of this appeal that we're dealing with here. And I would say that the answer is no, in the sense that, so when the case law is discussing, you know, the intertwinement between these more, what they describe as ministerial functions as opposed to purely judicial acts, it's what you'd expect a traditional, you know, evidentiary hearing to concern. You know, it's weighing of evidence, hearing testimony, issuing an order, making some sort of legal decision that involves some sort of exercise of discretion, even if it's guided by statutory factors or case law or whatever it might be. Our assertion here today is that there is nothing judicially taking place about the scheduling of this hearing. And I know that it may be the that that's too fine of a separation of parsing out of the different stages here. But the fact of the matter is just in our view, in the view of Mr. Fort, when he was calculating these numbers in his head was that the, yes, at the end of the day, the board might decline to release him or to end his sentence there. But that will be based on the weighing of the evidence and what the factors of this statute describes. You know, that requires the preparation of a report, a community custody type evaluation. And whereas that's not in place, there's no weighing of evidence or whether he's ready for one of these hearings or whether he has, you know, whether there's no order issued saying that, OK, transport him for one of these hearings. It's just a mandatory part of the statutory scheme. And so there's no discretion or there's no there's no decision essentially being made. It's just part of the process is a precursor kind of leading up to the final determination. And so while I believe it is a fine line to draw there, I think that this case law does dictate that the analysis here involves more viewing the specific act that's being discussed as opposed to the person performing it or that type of situation. And so here, more important than it being the board's responsibility to schedule this hearing, it's more that the act itself is very restrained by what we have, the law here we have here in Washington. And so there's no room for the type of judicial action or decision making that would trigger quasi judicial immunity in some of these previous cases that this court has reviewed, as well as the Supreme Court and Court of Appeals here in Washington. Mr. Babbitt, if I could ask one question related to what you just said. I thought there was a question for Mr. Antoine. There is, Your Honor, yes. Which basically says, I understand it, right? And I'll have the same question for Mr. Brooks, so we can listen in too. But I thought it said that non-discretionary actions are not entitled to quasi judicial immunity. And if the statutory scheme here makes scheduling the hearing within 120 days non-discretionary, then I'm not seeing why there would be a judicial immunity, which is a smart question for Mr. Brooks, because I'm agreeing with your position. It's an excellent question, Your Honor, and I'll just briefly address it. And I think that it's a great question. And I think that that is, when you review this case law and kind of the progeny from the bigger, like the Court of Appeals cases that have come down discussing this issue, it appears to me to be very fact specific. And I guess I would argue that that's what we're proposing here, is we have a different variation of facts that have been presented previously. And so, Your Honor is correct. And I think in that the, basically, the language here dictating what the board is supposed to do and when they're supposed to do it is stronger than in most cases. I believe that, I'm sorry, Your Honor, I know that one of the cases about a bankruptcy trustee, I think that was cited, that might be Castillo. And those cases, you know, especially something like a trustee, they're inherently being trusted, you know, not to play on words, but with making some decision making and having some authority over whatever it is that they are appointed to. And so, it's kind of that difference in the power that the person holds in that specific situation would be our argument in that here there is no power. And so, that does not trigger quasi-judicial immunity. Whereas, you know, if it's a trustee who's making a determination on how assets would be, you know, managed or distributed, obviously that almost inherently involves some sort of a higher level of authority and decision making authority and discretion. And so, I believe that that would be a distinguishing factor in this case from what has been cited in the briefing and discussed before. And I think that that would be our grounds to stand on here in saying that the district court erred in that, everyone has immunity for that specific fact which took place in this case. And unless the panel has any other questions, I would like to reserve the rest of my time to rebuttal with the plea from the court. Are you familiar with the 7th Circuit decision, Wilson v. Kelcoff? That sounds familiar, Your Honor. I can't say I'm intimately familiar with the facts, though. Oh, because it seems like it's the exact same. Maybe the parole board failed to hold a hearing for parole proceedings and the 7th Circuit said that that's an administrative decision that's quasi-judicial in nature. And, Your Honor, I would say that cases involving a parole board and even somewhat similar decisions to what we're discussing here today have been presented to the court, including the case that you just cited. But I would say that I do not believe, at least that I have come across, that we have seen one with the exact same statutory requirements for the board to follow, at least in this specific kind of process leading up to a decision which does affect his personal freedom, essentially, whether he's going to be incarcerated any further or not. And so I do think that would be all, Your Honor, and I would reserve the rest of my time. The language from the 7th Circuit says that judicial acts that are part of the judicial function in the parole setting are not excluded from immunity because they could be characterized as non-discretionary. So that seems to cover this situation, but I was just curious if you had any response to that language. Your Honor, my only response would be I'm not aware of the exact statutory language at issue in that case, and so I can't speak to that with specificity, so I'm sorry about that. All right, that's fine. Thank you. Okay, so, Mr. Babbitt, I want to make sure you've fully answered Judge Rollinson. Yes. Don't worry about your time. Yes, I'm satisfied. Thank you. We'll give you two minutes of rebuttal, Mr. Babbitt, even though your time's gone now. We'll hear from Mr. Brooks, please. Good morning, Your Honors. I have the pleasure to court. My name is Jacob Brooks. I'm representing the State of Washington, the Washington State Indeterminate Sentence Review Board, and the other named defendants in this case. The central question of this case is whether the Washington State Indeterminate Sentence Review Board is entitled to quasi-judicial absolute immunity regarding its decisions for indeterminate sentences of inmates convicted of sex crimes. This circuit, the Washington State Supreme Court, and other circuits have held that parole boards, like the Indeterminate Sentence Review Board, are entitled to quasi-judicial absolute immunity. Moreover, the narrow exception to this absolute immunity for purely ministerial functions that are unrelated to the judicial process is not applicable here. This is a very We have extended absolute quasi-judicial immunity in post-Antoine decisions to court clerks and other non-judicial officers for purely administrative acts. Acts which, taken out of context, would appear ministerial, but when viewed in context, are actually part of the judicial function. And so I'll turn first to Judge Gould's question regarding the Antoine case. And the Antoine case was a case in front of the Supreme Court, and that involved a court reporter that was seriously delinquent in turning over transcripts of a criminal proceeding. And even though the court reporter had been paid and there were several orders from the trial court and appellate courts ordering the court reporter to turn over the transcript, eventually the criminal defendant in that lawsuit filed suit against the court reporter. And you're correct, Your Honor, that that is what the court said about, you know, this ministerial function. But the Castillo case and cases from other circuits have made it clear that the courts aren't going to parse into the judicial function. And whenever something falls within that judicial function, that is entitled to judicial immunity or quasi-judicial immunity. And the cases from Castillo, the Wilson v. Kelcoff case that was referenced earlier, and another case from the Seventh Circuit, the Thompson v. Duke case, have made it clear that the scheduling of a hearing and the setting of a hearing and the noticing of a hearing all are part of this quasi-judicial function that is entitled to absolute immunity. And so here at the outset, it's important to note that Mr. Fort is not disputing that the Indeterminate Sentence Review Board is entitled to quasi-judicial immunity for its decisions regarding the indeterminate sentences of sex offenders. Instead, Mr. Fort is relying upon a very narrow exception to quasi-judicial immunity for purely administrative functions. And I'll turn back to the Wilson v. — well, I'll start with this circuit's prior ruling and the Enrique Castillo case, because I think that is instructive here. In that case, that was a bankruptcy proceeding. And as the court termed it in its opinion, there was a clerical error where a hearing was scheduled, but the notice of the hearing was not given to the person going through the bankruptcy proceeding or her attorney. And in that case, her home was ultimately foreclosed and sold in a foreclosure sale. But even given this clerical error, this court was clear. Both the scheduling and giving of notice of hearings are part of the judicial function of managing the bankruptcy court's docket and the resolution of disputes. That same reasoning applies here to the scheduling and giving notice of hearings for the indeterminate sentence review board. And the Seventh Circuit opinion in the Wilson v. Kelkoff case is very instructive here because it involves a very similar fact pattern. In that case, an inmate that was in front of the parole board wasn't given notice of the hearing. The inmate actually kind of went through a hearing, and as the court described it in that opinion, the inmate wasn't even actually aware or said he wasn't aware that he was going through a hearing and didn't present all this evidence that he said he would have if he had been given the notice of it. In that case, the parole board revoked his supervised release and held him in jail for a number of months after the hearing. And even there, when the plaintiff said the law is clear, it removes discretion, and under the state law, the parole board is given notice. The Seventh Circuit said that still falls within the realm of quasi-judicial immunity. And the court said that conduct deserving of protection includes not only actual decisions, but also those mundane, even mechanical tasks undertaken by judges that are related to the judicial process. Now, an earlier case from the Seventh Circuit, the Thompson v. Duke case, that case is also very similar and is very instructive here as well. In that case, the parole board did not timely schedule a hearing after the plaintiff was acquitted of a crime, and so the hearing for his parole revocation didn't occur the day after when it was scheduled to occur. And so he remained in prison for three days and was unfortunately severely beaten. But he was ultimately released from prison when he was released from the hospital a few days later. And in that case, again, the court explained that this is part of the scheduling of the hearing, is part of the quasi-judicial function that is entitled to absolute immunity. In that case, the court explained, in the continuum of judicial proceedings, some judicial acts require extensive exercise of a judge's decision-making skills and others do not. Yet all such acts make up the judicial function regardless of their isolated importance. In the judicial context, scheduling a case for hearing is part of the routine procedure in any litigated matter. However, the fact that the activity is routine and requires no adjudicatory skill renders that activity no less a concern. The misreports allegations in his complaint were that he was not given a timely scheduled hearing under the statute RCW 9.95.420. But as this court's prior precedent in the Enrique Steele case and the Seventh Circuit's explanation of very similar facts make it clear that quasi-judicial immunity applies here. The board is entitled to quasi-judicial absolute immunity and the district court was correct in dismissing this case under the Rule 12b6 motion that was filed earlier. If the court has no questions for me, I will stop while I'm ahead, but I'm happy to answer any questions you might have. You may be ahead, maybe far ahead, but I do have a question for you. Yes, Your Honor. If the Supreme Court in the Antoine case said that non-discretionary acts are not entitled to quasi-judicial immunity, and that's the Supreme Court's statement in law, and if the Supreme Court hasn't overruled that itself, how can a decision of the Seventh Circuit or of our circuit, like the cases that you've mentioned, how can those contradict what the Supreme Court said was the law? I would say this, Your Honor. First, it does require some discretion to set a hearing, even if it's prescribed by statute. It doesn't say specifically when the hearing has to occur, it just says within a certain amount of time. But on top of that, we don't have the record to reflect what the Indeterminate Sentence Review Board's decision-making process was in this case, because this was a 12B6 motion. But I would point out that Mr. Fort did have a prior Fort 20 hearing in 2014. And so it's certainly plausible, especially as Mr. Fort has alleged it, that the Indeterminate Sentence Review Board made the discretionary decision that this is something that didn't need to occur. And so the overarching point of the judicial immunity, I think, comes back into play here, which is the point of judicial immunity is that, so judges can be free to make decisions without fear of litigation. And it also allows the courts to establish the appellate process as the proper avenue for challenging those decisions. Counsel. Yes, ma'am. Didn't Antoine involve a court reporter? It did, Your Honor. The court reporter was over the transcripts of a criminal proceeding. And so on those facts as well, I would say that the Antoine case is pretty distinguishable, because unlike a judicial function, which is setting hearings and scheduling hearings, certainly as a judicial function, Antoine involves a very different factual scenario where, you know, as the court explained in that, you know, the court said, we're not trying to impugn, you know, what court reporters do. They do very difficult work, but it still does not require any act of discretion. They're simply there to take down the words verbatim that are said in a hearing or in a trial. And so on the facts, as well as, you know, the kind of underlying decision-making process, certainly distinguish the Antoine case from this scenario. Thank you, Mr. Brooks. Thank you, Your Honor. We appreciate the argument. Mr. Babbitt. Just very briefly, Your Honor, if the court will allow me. I just wanted to reiterate, I think, Your Honor, Judge Boole, you raise an excellent point in that the holding in Antoine seems a little bit difficult to reconcile with some of the language in, like, the cases, as counsel cited, Thompson v. Duke from the Seventh Circuit, in that they seem to be parsing out differences here in the necessity or the importance of scheduling the statutory required hearing versus the necessity or importance of preparing a transcript, which, to me, is certainly absolutely necessary in a direct appeal or, you know, not even a direct appeal. Other types of judgment proceedings, as well. It's just, I struggle with the logic in Thompson v. Duke in a sense that, where do we draw the line? What is a transcript necessary while a timely hearing is not? It's difficult for me to reconcile, and I think that this is what I was getting back to earlier, and that it's very fact-based. And so, the factual distinctions being made here, I don't see a huge difference between a court reporter preparing the transcript that is needed to be reviewed to make a judicial decision on whether to affirm or deny a lower court judgment. I, you know, the timely scheduling of a hearing, it, you know, maybe it's not always necessary, but in this case, it is mandated by statute. And so, you know, it's where do we draw the line between these different types of acts and which ones are discretionary and which ones are not? Well, counsel, the difference is who's performing the action. A court reporter is not typically performing judicial functions. A parole board has been recognized as typically performing judicial functions. So, to me, that's the distinction I see between Antwon and your case, is that court reporters generally are not considered to be quasi-judicial officials. Understood, Your Honor, and I guess my response to that would just be that the mechanical scheduling of a hearing is not a judicial function that whoever is doing that at the review board either. So, that would be my response to that, but I acknowledge that I'm out of time and maybe that was not a sufficient answer. But, unfortunately, I'll rest on the briefing for anything else. But thank you to the court for its time and consideration today. Okay. You're welcome, Mr. Babbitt. Now, I want to again thank both Mr. Babbitt and Mr. Brooks for their strong advocacy to us today of their respective clients' positions. It's a big help to us and we appreciate it. So, the case shall now be submitted and the parties will hear from us in due course. Thank you. Turn to the last case.
judges: GOULD, RAWLINSON, Zipps